IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Joshua A. Madsen, | Case No. 1:08 CV 202 |
| Petitioner, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Gerald T. McFaul, | |
| Respondent. | |

### INTRODUCTION

Petitioner Joshua Madsen, a prisoner in state custody, filed a Petition for a Writ of Habeas Corpus (Doc. No. 1).  The case was referred to United States Magistrate Judge Vernelis Armstrong for a Report and Recommendation (R&R) pursuant to Local Rule 72.2(b)(2).  The Magistrate recommended the Court grant the Petition (Doc. No. 11).

The State filed an Objection  (Doc. No. 13) to the Magistrate's R&R.  This Court held oral arguments on the pending Petition (Doc. No. 17).  In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a de novo determination of the Magistrate's findings and concurs with the Magistrate's ultimate judgment to grant the Petition, but does so on different grounds.

## BACKGROUND

**Original Trial and Subsequent Direct and Collateral Appeals**

The fact of critical importance in this case is that despite opportunities for clarification, the State charged Petitioner with *carbon-copy* undifferentiated counts of rape.[1] In August 2002, Petitioner was indicted with eight carbon-copy counts of rape, one count of kidnapping, one count of domestic violence, and one count of aggravated robbery. In September 2002, Petitioner requested a Bill of Particulars, which the State filed in October 2002. In the Bill of Particulars, the State again failed to differentiate among any of the eight counts of rape. Each of the eight counts were identical and read:

> That on or about August 5, 2002, at approximately 9:00 AM to 9:30 AM, and at the location of 4085 East 123rd Street, in the City of Cleveland, Ohio, the Defendant, Joshua Madsen, unlawfully engaged in sexual conduct with Tonya Carroll by purposely compelling her to submit by the use of force or threat of force.

(Doc. No. 8, Ex. 1). The State failed to designate any specific conduct or actions allegedly taken by Petitioner that would identify or distinguish one alleged rape count from any other alleged rape count.

The Bill of Particulars also indicated that all eight rape counts occurred at the same time as the lone kidnapping charge. The kidnapping charge read (*id.*):

> FURTHERMORE, on the same date, at the same time, and at the same location, the Defendant, Joshua Madsen, unlawfully and by force, threat or deception removed Tonya Carroll, from the place where she was found or restrained her of her liberty for the purpose of facilitating the commission of a felony or the flight thereafter and/or engaging in sexual activity, as defined in Section 2907.01 of the Revised Code, with Tonya Carroll against her will.

---

[1] Although not raised on direct appeal or in collateral proceedings in the first prosecution, the constitutionality of such a vague charging document is questionable at best. *See Russell v. United States*, 369 U.S. 749, 763-64 (1962); *Valentine v. Konteh*, 395 F.3d 626, 630-31 (6th Cir. 2005) ("[A]n indictment is only sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy.").

On November 11, 2002, Petitioner was tried before a jury. The trial court granted Petitioner's motion for judgment of acquittal under Ohio Criminal Rule 29 regarding the domestic violence charge. When instructing the jury, the trial court charged all eight carbon-copy rape counts simultaneously and collectively, and did not distinguish any one count from any other (Doc. No. 8, Ex. 2). Furthermore, the jury instructions for the kidnapping charge referenced, in part, the rape instructions (*id.*).

On December 9, 2002, the jury returned a guilty verdict for six identical counts of rape and one count of kidnapping. The jury found Petitioner not guilty of two identical counts of rape and the aggravated robbery count.

In January 2003, the trial court sentenced Petitioner to three years imprisonment for each of the six rape convictions, to be served consecutively. The trial court also sentenced Petitioner to three years for the kidnapping conviction, which the court ordered to be served concurrent to the sentences for the rape conviction, finding that "[t]he kidnapping merges with the rape, so I will not give consecutive sentences on the kidnapping because I believe under the law they are allied offenses and that they would merge for the purposes of sentencing" (Doc. No. 8, Ex. 3). The State did not object to this finding. Thus, Petitioner was sentenced to a total of 18 years imprisonment.

Petitioner pursued a direct appeal, a petition for post-conviction relief, and an application to re-open his direct appeal in the state courts. None of these efforts succeeded, and having exhausted his state remedies, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Case No. 06 CV 968). In August 2007, this Court adopted the Magistrate's R&R in that case and issued the writ on the basis of ineffective assistance of trial counsel, vacating Petitioner's convictions

and sentence. This Court ordered the State to either retry Petitioner within 120 days or release him from custody. The State did not appeal this ruling.

**Proceedings on Remand and the Instant Petition**

After this Court granted Petitioner's writ in Case No. 06 CV 698, in October 2007, Petitioner filed a motion to be released on bond from the Mansfield Correctional Institution, where he had been imprisoned for about five years. The trial court set Petitioner's bond at $75,000.

Also in October 2007, Petitioner filed a motion to dismiss based on double jeopardy protection. The State conceded that the Double Jeopardy Clause prevented re-prosecution of the remaining six rape counts because those counts could not be differentiated from the two which Petitioner was acquitted of due to the carbon-copy nature of the rape charges. However, the State maintained that the Double Jeopardy Clause did not prohibit Petitioner from being retried solely on the kidnapping count.

In December 2007, the trial court granted Petitioner's motion to dismiss with respect to the six rape counts, but denied the motion as to the kidnapping count. Petitioner then moved for a stay of trial proceedings to seek review of the double jeopardy ruling, and the State did not oppose this motion. The trial court stayed the proceedings pending resolution by this Court via federal habeas proceedings.

Petitioner filed the instant Petition in January 2008. The Magistrate issued her R&R in January 2009, and relying on the fact that Petitioner has already served at least three years in prison (and his original sentence for kidnapping was three years), the Magistrate concluded that double jeopardy barred re-prosecution on the kidnapping charged. She stated:

4

> The declaration to re-try Petitioner for kidnaping falls squarely within the third guarantee of the Double Jeopardy Clause -- a criminal defendant may not be given multiple punishments for the same offense. The same questions presented in the first trial will be dispositive in both cases. There has already been a factual resolution of the issue of Plaintiff's guilt of kidnaping. Petitioner has served the sentence. A re-trial will result in successive punishment for events arising from a single criminal transaction. * * *

(Doc. No. 11, p. 8). The State objected to the Magistrate's conclusion.

Following the issuance of the Magistrate's R&R, the U.S. Supreme Court issued its decision in *Yeager v. United States*, ___U.S.___, 129 S. Ct. 2360 (Jun. 18, 2009). The *Yeager* decision squarely addressed implication of the Double Jeopardy Clause in the prosecution of related charges. Both parties addressed *Yeager* during oral arguments on June 25, 2009.

## JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 2254(a): "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Although released on bail, Petitioner is "in custody" for habeas purposes. *See Delk v. Atkinson*, 665 F.2d 90, 93-94 (6th Cir. 1981). Petitioner argues his custody is unconstitutional because the Double Jeopardy Clause of the Fifth Amendment bars the State from re-prosecuting him on the kidnapping charge for which he now stands charged.

Under Ohio law, "the decision of a trial court denying a motion to dismiss on the ground of double jeopardy, is not a final appealable order, and is not subject to judicial review through an action in habeas corpus or prohibition, or any other action or proceeding invoking the original jurisdiction of an appellate court." *State ex. rel. White v. Junkin*, 80 Ohio St. 3d 335, 338 (1997). Petitioner, therefore, has properly exhausted available state court remedies as to this claim. *Harpster v. Ohio*,

5

128 F.3d 322, 325-26 (6th Cir. 1997) (noting that "the federal adjudication of double jeopardy claims raised on pre-trial petitions for habeas corpus is appropriate when those claims have been raised and rejected in the state trial court and under state law there is no right to interlocutory appeal").

### STANDARD OF REVIEW

The parties disagree on which standard of review this Court must apply under the unique circumstances of this case. Again, the state court decision under review is the trial court's decision denying Petitioner's motion to dismiss the kidnapping charge. Petitioner argues the Court must apply a de novo standard while the State maintains the Court must apply a modified version of the deferential review provided for in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

Petitioner provides two reasons why this Court should engage in a de novo review: (1) the state trial court did not provide any oral or written explanation for denying the motion to dismiss; and (2) because under Ohio law, the denial of the motion to dismiss is not considered a "final appealable order," the only court to have considered the issue is the state trial court. The State argues because Petitioner's motion is advanced under 28 U.S.C. § 2254 and because the state trial court gave a sufficient, albeit cursory explanation of its denial, a "modified AEDPA" standard applies.

Under AEDPA, a federal court may grant a writ of habeas corpus with respect to a claim "that was adjudicated on the merits" only where:

> the adjudication of the claim– (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6

28 U.S.C. § 2254(d). The AEDPA statute by its own terms is applicable only to habeas claims that were "adjudicated on the merits in State court." *Id.* Here, although the state trial court adjudicated Petitioner's double jeopardy *claim* with respect to kidnapping by denying the motion to dismiss, it did so without providing reasoning or engaging in legal analysis. The state trial court simply entered a Journal Entry on December 6, 2007 stating:

> UPON CONSIDERATION OF WRITTEN BRIEFS AND ORAL ARGUEMENTS [*sic*] DEFENDANT'S MOTION TO DISMISS CTS. 1-8 IS GRANTED. DEFENDANT'S MOTION TO DISMISS CT. 9 IS DENIED.

(Doc. No. 8, p. 26).

In *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), the court held that because "the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply;" rather, the habeas court must engage in a de novo review. In that case, petitioner raised an ineffective assistance of counsel claim in his application for leave to appeal to the Michigan Supreme Court. The Michigan Supreme Court denied leave to appeal in a summary order. *Id.* at 435. Petitioner then filed a motion for relief from judgment with the state trial court, again raising an ineffective assistance of counsel claim, and the trial court summarily denied relief, as did the state court of appeals with his application for leave to appeal. *Id.* The *Maples* court held that these summary denials did not constitute an adjudication on the merits under AEDPA, citing *Wiggins v. Smith*, 539 U.S. 510 (2003), which held that because no state court had analyzed petitioner's claim for prejudice under the second prong of *Strickland*, its review of that issue was de novo. *Id.* at 534. (The state courts had not reviewed the prejudice prong because they reached conclusions on the error prong of *Strickland*.) In the same vein, in *Danner v. Motley*, 448 F.3d 372, 376 (6th Cir. 2006), the

7

court held that federal courts will not apply AEDPA deference to a state court's adjudication if the state court "confined its analysis . . . to state law" or failed to examine applicable constitutional law.

However, state courts need not engage in a thorough analysis to have sufficiently adjudicated the issue on the merits so as to invoke a "modified AEDPA" standard of review. The State argues this is the appropriate standard under the circumstances here.

In *Hawkins v. Coyle*, 547 F.3d 540, 546 (6th Cir. 2008), the court held that "[w]here the state court disposes of a Federal constitutional claim with little-to-no articulated analysis of the constitutional issue, this circuit applies a modified form of AEDPA deference." *Id.* This modified standard requires the habeas court to "conduct a careful and independent review of the record and applicable law" but not to reverse "unless the state court's decision is contrary to or an unreasonable application of federal law." *Id.* (internal citations omitted). However, in *Hawkins*, the Ohio Supreme Court provided a legal basis, albeit short, for its ruling on petitioner's ineffective assistance of counsel claim. The Ohio Supreme Court held:

> [E]ven if appellant's arguments are considered on the merits, appellant has failed to satisfy his burden of establishing ineffective assistance under the standards set forth in *Strickland v. Washington*.

*Id.* at 547. The Sixth Circuit held this statement constituted an "adjudication on the merits," but in light of its cursory nature, applied the modified AEDPA deference. *Id.* at 546.

This Court does not believe the state trial court "dropped" or "missed" Petitioner's double jeopardy claim. Indeed, it seems implicit that the trial court considered the merits of Petitioner's claim, given the fact it held oral arguments on the subject and stayed the case pending resolution by this Court of the singular double jeopardy issue related to the kidnapping charge. However, in the absence of *any* basis for the trial court's decision, coupled with the fact that the decision has not been

8

reviewed by *any* other state court, this Court finds it inappropriate to afford even "modified AEDPA" deference because Petitioner's claim was not "adjudicated on the merits." *See* 28 U.S.C. § 2254(d); *see also Fleming v. Metrish*, 556 F.3d 520, 531 (6th Cir. 2009) (noting that *Maples* and *Danner* "clearly imply that AEDPA deference would apply if the state court conducts *any* reasoned elaboration of an issue under federal law") (emphasis added).  Here, the state trial court provided no explanation in denying Petitioner's motion to dismiss the kidnapping count, and certainly less explanation than the Ohio Supreme Court provided in *Hawkins*.  Therefore, this Court reviews de novo the state trial court's conclusion that re-prosecution on the kidnapping count does not violate the Double Jeopardy Clause.

### ANALYSIS: DOUBLE JEOPARDY CLAUSE

The legal question before this Court is whether the Double Jeopardy Clause bars re-prosecution in this case for the kidnapping charge when Petitioner was acquitted of rape charges which arose from the same conduct as the kidnapping charge.  This Court realizes the jury acquitted Petitioner on two of the eight rape counts, but the carbon-copy nature of the Indictment and Bill of Particulars result in an effective acquittal on all eight counts for the purpose of evaluating this Petition. Therefore, this Court finds double jeopardy does bar such re-prosecution.

The Fifth Amendment's Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."  The Clause "embodies two vitally important interests."  *Yeager*, 129 S. Ct. at 2365.  The first interest is that states "should not be allowed to make repeated attempts to convict an individual for embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."  *Green v. United States*, 335 U.S. 184,

187-88 (1957). The second interest is preserving "the finality of judgments." *Crist v. Bretz*, 437 U.S. 28, 33 (1978).

To that end, the Double Jeopardy Clause precludes "relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager*, 129 S. Ct. at 2366 (citing *Ashe v. Swenson*, 397 U.S. 436 (1970)). "'[W]hen an issue of ultimate fact has once been determined by a valid and final judgment' of acquittal, it 'cannot again be litigated' in a second trial for a separate offense." *Id.* at 2367 (quoting *Ashe*, 397 U.S. at 443).

Whether the jury decided an issue of ultimate fact that precludes a conviction of kidnapping is by necessity case-specific. "To decipher what a jury has necessarily decided . . . courts should 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" *Id.* (quoting *Ashe*, 397 U.S. at 444). This inquiry "must be set in a practical frame and viewed with an eye to all circumstances of the proceedings." *Id.* (internal citations omitted).

This Court need not concern itself with the seemingly contradictory findings of the jury (i.e., acquitting on two counts of rape while convicting on the remaining six rape counts and the kidnapping count). The underlying facts in *Yeager* are illustrative of this point. Defendant was indicted for securities and wire fraud, insider trading, and other related charges. *Id.* at 2363. The jury acquitted defendant on the fraud counts but failed to reach a verdict on the insider trading counts. *Id.* at 2364. After the government re-charged him with some of the insider-trading counts, defendant moved to dismiss the charges on the ground that the jury, by acquitting him on the fraud counts, had necessarily decided that he did not possess material, non-public information about the business project's

10

performance and value, and therefore double jeopardy barred a second trial. *Id.* The district court denied the motion, and the Fifth Circuit affirmed. *Id.* The Supreme Court reversed, finding that an apparent inconsistency between a jury's verdict of acquittal on some counts and its failure to return a verdict on other counts does not affect the acquittals' preclusive force under the Double Jeopardy Clause. *Id.* at 2367.

Similarly, here, the jury's acquittal on the rape counts and the conviction (and ultimate vacation) of the kidnapping count is a non-event in examining whether the jury determined an issue of ultimate fact. Rather, this Court looks to the facts and the underlying proceedings. Here, Petitioner was charged with kidnapping in the context of rape. Under Ohio law, because no physical movement or relocation is required to constitute the offense of kidnapping, a kidnapping offense is "implicit within every forcible rape." *State v. Logan*, 60 Ohio St. 2d 126, 130 (1979).

In an effort to provide a constitutional prophylactic against double jeopardy concerns raised by the tandem nature of certain crimes, the Ohio General Assembly adopted R.C. § 2941.25, which provides that:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Thus, under this statute, an individual can only be convicted of both kidnapping and rape if the kidnapping offense was committed with a separate animus. *Logan*, 60 Ohio St. 2d at 131. In determining whether a kidnapping offense was committed with a separate animus, Ohio courts must

11

consider "whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has significance independent of the other offense." *Id.* at syllabus ¶ (a).

The trial court concluded the kidnapping count was an allied offense under R.C. § 2941.25(A), and merged it with the six rape counts, and ordered the three-year prison term for kidnapping to run concurrent to the eighteen-year sentence for the rapes. This Court agrees with the State that the trial court's finding that the two were allied offenses for sentencing purposes is not dispositive evidence that the rape and kidnapping charges shared "issues of ultimate fact" such that double jeopardy bars re-prosecution. R.C. § 2941.25 offers greater protections than those provided by the Double Jeopardy Clause. However, this finding by the trial court is one part of "all circumstances of the proceedings" which this Court is required to evaluate when considering "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Yeager*, 129 S. Ct. at 2367.

It is clear that in order to convict Petitioner of kidnapping at a retrial, the State would have to present evidence that Petitioner committed rape, and the State is clearly precluded by double jeopardy from retrying Petitioner for rape. It is certainly possible to have a kidnapping under Ohio law without having a rape, but not under the particular facts of this case. One of the elements of kidnapping is that the victim was restrained in her liberty. The restraint element of kidnapping and the force element of rape in this case were the same. It was the alleged rape that constituted the restraint in this case, and thus the restraint element of kidnapping is a critical issue of ultimate fact shared by the rape charges. In the Bill of Particulars, the kidnapping is said to have occurred during the exact same time and place as the eight rapes. The jury instructions for kidnapping reference the instructions provided

12

for rape. The trial court found there was no separate restraint when it merged the two crimes for sentencing purposes. The only restraint that occurred was the consummation of the alleged rape. The overlap between the rape charges and kidnapping charge here is so nearly complete that the two charges effectively rise and fall together. As counsel for Petitioner stated at oral argument, "[t]here was not separate kidnapping. There was the kidnapping inherent in the rape and that's it." The State cannot retry Petitioner for the same conduct for which he was acquitted by simply renaming the crime. Thus, the State cannot retry Petitioner for kidnapping for the same reason it cannot retry him on the rape charges.

The thrust of the State's argument is that the Double Jeopardy Clause does not bar the State from re-prosecuting Petitioner simply because his conviction was vacated and the state trial court merged the crimes for sentencing purposes under R.C. § 2941.25.

No one disputes the proposition that a successful appeal of a judgment of conviction, on any ground other than insufficiency of the evidence, poses no bar to further prosecution on the same charge. *See United States v. Scott*, 437 U.S. 82, 90-91 (1978). But this simple statement of black letter law fails to account for the fact that Petitioner was effectively acquitted of the rape counts.

Further, the State's reliance on *State v. Staten*, No. 98 AP-263, 1999 WL 52381 (10th Dist. Ohio Feb. 4, 1999) is misplaced. In that case, defendant was not acquitted of a crime and therefore was not arguing the jury already addressed an "issue of ultimate fact." Rather, defendant argued that after the sentencing judge merged his kidnapping conviction with his rape convictions under R.C. § 2941.25(A), defendant could not subsequently be re-prosecuted on both rape and kidnapping charges after his convictions were vacated on appeal. The court of appeals rejected this argument.

13

Here, Petitioner argues not that the merger itself bars re-prosecution, but rather the rape counts rely on the same critical facts as the kidnapping count and therefore bar re-prosecution for kidnapping.

## CONCLUSION

After conducting a de novo review of the portions of the Magistrate's R&R objected to by the State and hearing the parties at oral argument, this Court finds a re-prosecution of Petitioner on the kidnapping count would violate the Double Jeopardy Clause. This Court grants Petitioner a Writ of Habeas Corpus discharging him from further confinement and enjoins the State from re-prosecuting Petitioner on the kidnapping count.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

August 13, 2009